## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brian B.,<br><br>   Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br>Acting Commissioner of Social Security,<br><br>   Defendant. | Case No. 18-cv-2072 (NEB/SER)<br><br>**REPORT AND<br>RECOMMENDATION** |

STEVEN E. RAU, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks review of the Acting Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB"). (ECF No. 1). The parties filed cross-motions for summary judgment. (ECF Nos. 12, 18). For the reasons set forth below, the Court recommends denying Plaintiff's motion and granting the Commissioner's motion.

### I.   BACKGROUND

####    A.   Procedural History

Plaintiff filed for DIB on September 29, 2014, initially citing an alleged onset date of November 7, 2012, but later revising this date to April 2, 2013. (Admin. R. at 26, 106, 294, ECF No. 10). Plaintiff alleged disability due to neck and bilateral arm pain; cervical disk neck pain in his shoulder region; numbness in his head and face area; low grade fevers; pain in his left hand and shoulder blades; and limitations in walking due to ankle injuries.

1

(Admin. R. at 106, 120). Plaintiff's claims were denied initially and upon reconsideration. (Admin. R. at 131, 143). Following a hearing, the administrative law judge (the "ALJ") denied benefits to Plaintiff on September 20, 2017. (Admin. R. at 40). The Appeals Council denied Plaintiff's requests for review, rendering the ALJ's decision final. (Admin. R. at 13, 17). Plaintiff then initiated this suit. (ECF No. 1).

### B. Factual Background

The Court reviewed the entire Administrative Record but summarizes only the evidence necessary to determine the issues before the Court.

#### 1. Medical Evidence

Plaintiff suffered a workplace injury in May 2012 and as a result developed paresthesia;[1] and neck, left shoulder, and left arm pain. (Admin. R. at 311, 450, 517). Plaintiff had cervical spine MRIs in November 2012 and May 2013 which showed degenerative cervical spondylosis[2] with a large bone spur causing mass effect and displacement of the right C6 nerve root, and facet joint arthrosis[3] at C5–C6. A cervical

---

[1] Paresthesia is similar to a pinched nerve and the symptoms involve tingling and pins and needles sensations in the affected area. *Pinched Nerve*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/pinched-nerve/symptoms-causes/syc-20354746 (Mar. 9, 2018).

[2] "Cervical spondylosis is a general term for age-related wear and tear affecting the spinal disks in your neck. As the disks dehydrate and shrink, signs of osteoarthritis develop, including bony projections along the edges of bones (bone spurs)." *Cervical Spondylosis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 (June 16, 2018).

[3] "The facet joints are joints in the spine located in the back (posterior) aspect of the spine." *Facet Arthritis*, MAYO CLINIC, https://sportsmedicine.mayoclinic.org/condition/facet-arthritis/ (last visited May 3, 2019). "Facet arthritis happens when the cartilage that covers the ends of the joints wears out and becomes thin. This can contribute to the growth of osteophytes (bone spurs) and hypertrophy (enlargement) of the joints." *Id.* The C5 and C6 disks are located on your spinal cord. *Id.*

myelogram and CT scan also showed some foraminal narrowing on the left side.[4] A November 2012 MRI of Plaintiff's left shoulder showed tendinosis in the supraspinatus tendon,[5] degenerative cystic change,[6] and intra-articular tendinosis. (Admin. R. at 622).

In April 2013, Plaintiff's medical examination showed he had altered sensation on the left side of his face that ran to his left shoulder and hand. (Admin. R. at 473). In May 2013, Plaintiff had an MRI of his head showing "small vessel disease, which was normal, part of aging, and [of] no concern," an MRA of his neck which showed no artery problems, and extensive laboratory work which was normal. (Admin. R. at 32, 318). In September 2013, Plaintiff reported having less tightness in his neck and less facial numbness after a cervical surgery. (Admin. R. at 32, 325).

A December 2013 examination showed Plaintiff having pain in the left shoulder and neck, and numbness in his face. (Admin. R. at 474, 499). A report later in December 2013 shows Plaintiff was not in acute distress, was alert and oriented, had 4/5 motor strength on his left side and 5/5 strength on this right side, and had a normal gait. (Admin. R. at 33, 363). A March 2014 report showed Plaintiff's reflexes and sensation were intact, that

---

[4] "Foraminal narrowing refers to a loss of space, or narrowing, of the foramen, in the spine . . . This narrowing can occur in acute circumstances such as a new injury, as well as in a degenerative, or wear-and-tear type of situation." *What is Foraminal Narrowing?*, NORTHAMERICAN SPINE, https://north americanspine.com/conditions/foraminal-narrowing/ (last visited May 3, 2019).

[5] "Tendinosis "involves degenerative changes in the tendon, along with abnormal new blood vessel growth." *Tendinitis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/tendinitis/symptoms-causes/syc-20378243 (Dec. 14, 2017).

[6] Degenerative cystic change is also known as osteoarthritis and "occurs when the protective cartilage on the ends of your bones wears down over time . . . Eventually, if the cartilage wears down completely, you may be left with bone rubbing on bone." *Osteoarthritis*, MAYO CLINIC, https://www.mayo clinic.org/diseases-conditions/osteoarthritis/symptoms-causes/syc-20351925 (Mar. 6, 2018).

Plaintiff could grip 80 pounds with his right hand and 20 pounds with his left hand, and that he scored 40–60 pounds with his right hand and 20–40 pounds with his left hand on rapid alternating grip strength. (Admin. R. at 33, 345). An April 2014 report showed Plaintiff had normal rotation of his head, a normal range of motion in his shoulder, a normal gait, and he had 5/5 strength in all major muscle groups in all extremities. (Admin. R. at 33, 341). A May 2015 report also showed Plaintiff was alert and oriented, had a normal gait, and had 5/5 strength throughout his muscle groups. (Admin. R. at 33, 657–58).

Between August of 2015 and February of 2017, Plaintiff's medical records primarily concerned pain in his leg and foot. (*See* Admin. R. at 665–821). Because this is not at issue in the parties' present motions, the Court does not delve into these records.

### 2. Plaintiff's Medical Opinions

Plaintiff had medical opinions from multiple providers in the record. Mr. Wirth, an occupational therapist, opined that Plaintiff had limited range in his left shoulder, could not lift his left arm to shoulder height or above for more than five percent of the day, and had to be slow and cautious in the use of his left arm. (Admin. R. at 350). Dr. Norelle, Plaintiff's treating physician, agreed with Mr. Wirth's limitations in January 2014 but did not conduct any evaluation of her own. (Admin. R. at 351).

In January 2015, Dr. Johnson found that Plaintiff had severe pain with any movement of his left shoulder and had poor use of his left hand. (Admin. R. at 644). Dr. Johnson also asserted that "[a]ny jobs requiring use of the left arm and hand are certainly going to be impaired." (Admin. R. at 644). In May 2015, Dr. Undelande opined Plaintiff could occasionally lift up to ten pounds with his left arm. (Admin. R. at 652).

4

There were also two state agency physicians who reviewed Plaintiff's file and gave medical opinions. Dr. Katz reviewed Plaintiff's file in February 2015 and asserted Plaintiff should limit frequent pushing and pulling in his left arm. (Admin. R. at 113–16). Dr. Fingar reviewed Plaintiff's file in May 2015 and found the same. (Admin. R. at 126–27).

### 3. Plaintiff's Work History and Daily Activity

Plaintiff worked as a delivery route salesperson, a customer service representative, and an auto salesperson. (Admin. R. at 38, 78). At the hearing, Plaintiff testified he helps care for animals, and can prepare sandwiches, vacuum, shop for groceries, and drive. (Admin. R. at 59, 68–69).

### C. The ALJ's Decision

Consistent with the Social Security Administration's regulations, the ALJ conducted the five-step eligibility analysis. (Admin. R. at 10–22); *see also* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his amended, alleged onset date. (Admin. R. at 29). At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, dysfunction of major joints (left shoulder and ankles), disorders of muscle ligaments and fascia (left shoulder), and peripheral artery disease. (Admin. R. at 29). At step three, the ALJ considered Listing 1.02 for major dysfunction of a joint, Listing 1.04 on disorders of the spine, and Listing 4.12 of appendix 1 impairments. (Admin. R. at 29–30). After considering these Listings, the ALJ stated Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (Admin. R. at 29). The ALJ found Plaintiff to have the residual

5

functional capacity ("RFC") to perform light work from April 2, 2013 until December 31, 2015. (Admin. R. at 30). The ALJ stated:

> [Plaintiff] can lift and carry occasionally twenty pounds and frequently ten pounds. He can sit for up to six hours in an eight-hour workday, walk for up to six hours in an eight-hour workday, and stand for up to six hours in an eight-hour workday. He can frequently operate foot controls with the right foot. He can occasionally push and pull with the left upper extremity and occasionally reach overhead with the left upper extremity. He can handle and finger frequently with the left hand. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He can never climb ladders, ropes, or scaffolds. He can never crawl. He can never work at unprotected heights, near moving mechanical parts, and cannot engage in commercial driving. He can tolerate occasional exposure to humidity and wetness.

Between January 1, 2016 to the date of the decision, the ALJ found Plaintiff to have the RFC to perform sedentary work. (Admin. R. at 35). The ALJ stated:

> He can lift and carry occasionally ten pounds and frequently less than ten pounds. He can sit up to six hours in an eight hour day, walk for up to two hours in an eight-hour workday, and stand for up to two hours in an eight-hour workday. He can frequently operate foot controls bilaterally. He can occasionally push and pull with the left upper extremity and occasionally reach overhead with the left upper extremity. He can handle and finger frequently with the left hand. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He can never climb ladders, ropes, or scaffolds, and can never crawl. He can never work at unprotected heights, near moving mechanical parts, and cannot engage in commercial driving. He can tolerate occasional exposure to humidity and wetness.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. (Admin. R. at 38). But, at step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (Admin. R. at 39). The ALJ thus concluded Plaintiff was not disabled. (Admin. R. at 39).

6

## II.  DISCUSSION

### A.  Legal Standard

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (internal quotation marks omitted). The Court's task is limited "to review[ing] the record for legal error and to ensur[ing] that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000). A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

### B.  Analysis

Plaintiff contends the ALJ committed legal error by failing to account for all of Plaintiff's left arm limitations when determining Plaintiff's RFC. Specifically, Plaintiff claims the ALJ failed to discuss or weigh the treating medical opinions of Dr. Norelle, Dr. Johnson, Dr. Undelande, and Dr. Fingar. Plaintiff also asserts the ALJ erred at step five because the ALJ did not apply or address the heightened standard required for skill transferability for claimants who have reached advanced age. The Court addresses each argument in turn.

### 1. ALJ's RFC Finding

Plaintiff claims ALJ committed legal and factual error in determining Plaintiff's RFC. Plaintiff first contends the ALJ ignored findings of more severe left arm limitations than those accounted for in Plaintiff's RFC. Plaintiff then contends the ALJ failed to address Dr. Norelle's treating opinion and to properly weigh various medical opinions.

An ALJ must determine a claimant's RFC based on all relevant evidence, including observations of treating physicians and others, and the claimant's description of his limitations. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217–18 (8th Cir. 2001). Here, the ALJ properly found Plaintiff to have the RFC to perform light work from April 2, 2013 through December 31, 2015 and to perform sedentary work from January 1, 2016 through the date of the ALJ's decision.

The ALJ contrasted Plaintiff's alleged limitations and Plaintiff's daily activities in determining Plaintiff's RFC. The ALJ noted that Plaintiff "stated he could not sustain multiple reach, grasping, or lifting with the left arm, shoulder, hand or elbow"; that he "has constant neck and shoulder pain with facial numbness"; and that "he has muscle spasms in the left arm and shoulder and left side of his face." (Admin. R. at 31, 220). But the ALJ also noted that Plaintiff helps care for animals, and can prepare sandwiches, vacuum, shop for groceries, and drive. (Admin. R. at 31, 59, 68–69). Thus, substantial evidence supports the ALJ's finding that "the objective evidence does not support his [Plaintiff's] contentions regarding the severity, chronicity, and/or frequency of his symptoms." (Admin. R. at 31). *See Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (finding testimony not credible where participation in activities of daily living inconsistent with complaints).

The ALJ also cited to a host of medical evidence in the record in determining Plaintiff's RFC. In May 2013, Plaintiff had an MRI of his head showing "small vessel disease, which was normal, part of aging, and [of] no concern," an MRA of his neck which showed artery problems, and extensive laboratory work which was normal. (Admin. R. at 32, 318). A September 2013 report noted Plaintiff had less tightness in his neck and less facial numbness after a cervical surgery. (Admin. R. at 32, 325). A December 2013 report observed Plaintiff was not in acute distress, was alert and oriented, had 4/5 motor strength on his left side and 5/5 strength on this right side, and had a normal gait. (Admin. R. at 33, 363). A March 2014 report showed Plaintiff's reflexes and sensation were intact; he could grip 80 pounds with his right hand and 20 pounds with his left hand; and on rapid alternating grip strength, Plaintiff scored 40–60 pounds with his right hand and 20–40 pounds with his left hand. (Admin. R. at 33, 345). An April 2014 report stated Plaintiff had normal rotation of his head and shoulder, he had a normal gait, and he had 5/5 strength in all major muscle groups in all extremities. (Admin. R. at 33, 341). A May 2015 report also specified Plaintiff was alert and oriented, had a normal gait, and had 5/5 strength throughout. (Admin. R. at 33, 657–58). While Plaintiff asserts there is a host of evidence to support his argument that he has a lower RFC than the ALJ determined, the Court cannot "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion . . . ." *Harwood*, 186 F.3d at 1042.

Finally, the ALJ also properly considered the medical opinion evidence when determining Plaintiff's RFC. Plaintiff argues the ALJ failed to discuss or weigh Dr. Norelle's treating opinion. The opinion Plaintiff refers is from January 2014, in which Dr.

9

Norelle asserts she agrees with occupational therapist Dale Wirth's January 2014 assessment—not an opinion based on Dr. Norelle's own evaluations or judgment. (Admin. R. at 347). Mr. Wirth opined Plaintiff would not meet the essential physical demands of any competitive work. (Admin. R. at 351). The ALJ noted that Mr. Wirth was an occupational therapist and thus not considered an acceptable medical source. (Admin. R. at 34); *see also* 20 C.F.R. § 404.1513(a) (listing a number of acceptable medical sources, which do not include occupational therapists). Moreover, Mr. Wirth's assessment is also inconsistent with the record as a whole. As discussed above, Plaintiff's examinations after Mr. Wirth's assessment show Plaintiff having full strength and intact sensation. (Admin. R. at 33, 345, 341, 657–58). *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight. (internal quotations omitted)). The ALJ did not err in discounting Mr. Wirth's opinion when it was an unacceptable medical source and was inconsistent with the record as a whole.

Plaintiff also argues the ALJ should have given more weight to Dr. Johnson and Dr. Undelande. Dr. Johnson asserted Plaintiff has poor use of his left hand and that any jobs requiring the use of his left arm would be impaired. (Admin. R. at 645). Dr. Undelande opined Plaintiff could occasionally lift up to ten pounds and could not lift more without pain. (Admin. R. at 652). The ALJ assigned less weight to Dr. Johnson's opinion because it was a "vague blanket statement." (Admin. R. at 35). The ALJ assigned less weight to both opinions because they were inconsistent with the record. As discussed above, Plaintiff helps care for animals, can prepare sandwiches, vacuum, shop for groceries, and drive.

10

(Admin. R. at 31, 59, 68–69). Multiple medical examinations also showed Plaintiff having full strength and intact sensation. (Admin. R. at 33, 345, 341, 657–58). The ALJ did not err in assigning these opinions less weight when they are contrary to the record as a whole. *See Travis*, 477 F.3d at 1041.

Plaintiff further asserts the reviewing state agency physicians conceded Plaintiff could not use his left arm to perform any significant lifting or carrying. Dr. Katz reviewed Plaintiff's file in February 2015 and stated Plaintiff should limit frequent pushing and pulling in his left arm. (Admin. R. at 113–16). Significantly, Dr. Katz did not state Plaintiff could never use his left arm. Dr. Fingar also reviewed Plaintiff's file in May 2015 and found the same. (Admin. R. at 126–27). Both state agency physicians determined Plaintiff was not disabled. (Admin. R. at 116, 129). Contrary to Plaintiff's assertions, the ALJ's determination that Plaintiff had the RFC to perform light work from April 2, 2013 through December 31, 2015 is consistent with the state agency physicians' evaluations. The ALJ determined Plaintiff only had the RFC to do sedentary work in the period following the evaluations. The ALJ's determinations are supported by, and not inconsistent with, the state agency physicians' evaluations.

### 2.     ALJ's Findings at Step Five

Plaintiff claims the ALJ erred at step five by failing to consider Plaintiff's age when determining if he had skills transferable to jobs available in the national economy. Plaintiff specifically claims the ALJ failed to analyze whether Plaintiff met the Agency's more stringent skills transferability standard for claimants of advanced age limited to light or

11

sedentary work. Plaintiff also asserts the vocational expert (the "VE") reported the only jobs available to Plaintiff would require significant vocational adjustments.

In evaluating a claimant's transferable skills, an ALJ may rely on a VE's responses. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("This method of determining whether transferable skills exist is explicitly allowed . . . ."). Medical Vocational Guideline Rule 202.07 directs a finding of not disabled for an individual of advanced age with at least a high school education, who has skilled or semi-skilled previous work experience with transferable skills. 20 C.F.R. § 404, Subpt. P, App. 2, § 202.07. In contrast, Rule 202.06 directs a finding of disabled for the same person if they have no transferable skills. 20 C.F.R. § 404, Subpt. P, App. 2, § 202.06. Under Rule 202.00(c), if an individual's transferable skills are not "readily transferable to a significant range of semi-skilled or skilled work," that individual should be found disabled. 20 C.F.R. § 404, Subpt. P, App. 2, § 202.00(c).

The Court finds the ALJ did not err in determining Plaintiff had transferrable skills between April 2, 2013 and December 31, 2015. Plaintiff completed two years of college, meeting the first requirement of Rule 202.07. (Admin. R. at 60). Plaintiff also met the next requirement because he had semi-skilled previous work as a delivery route salesperson and an automobile salesperson with transferable skills. (Admin. R. at 296). As discussed above, the ALJ properly found Plaintiff had the RFC to perform the light work during this period. (Admin. R. at 30). In a written interrogatory, the ALJ specifically asked the VE if Plaintiff had transferrable skills from his past relevant work as a delivery route salesperson and automobile salesperson. (Admin. R. at 296–97). The VE asserted Plaintiff had the

transferable skills of merchandising-sales, transporting, and customer service. (Tr. at 297). The ALJ then asked the VE if any of these skills would transfer to light work. The VE stated Plaintiff's skills would transfer to the light, semiskilled jobs of salesperson in auto accessories or general merchandise and a food sales clerk. (Admin. R. at 298). The VE asserted Plaintiff would not need any additional skills beyond the transferable skills he already possessed. (Admin. R. at 298). Despite the fact that the ALJ failed to specify whether Plaintiff's skills were "readily transferable," the record as a whole establishes Plaintiff had "readily transferable skills" to jobs that existed in significant numbers in the national economy. *See Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (stating that there is no need to remand if the ALJ's "arguable deficiency in opinion-writing technique" had no bearing on the outcome of the case).

    The Court also finds the ALJ did not err in determining Plaintiff had transferrable skills between January 1, 2016 and September 20, 2017. As discussed above, the ALJ properly found Plaintiff had the RFC to perform sedentary work during this period. (Admin. R. at 30). The ALJ asked the VE if any of the skills from Plaintiff's past work would transfer to sedentary work. (Admin. R. at 298). The VE did state there were no sedentary jobs so similar to Plaintiff's past relevant work that Plaintiff would need to make very little, if any, vocational adjustments. (Admin. R. at 299). But, the VE asserted that Plaintiff's past skills *would transfer* to the sedentary job of a telephone solicitor. (Admin. R. at 299); *see also* 20 C.F.R. § 404, Subpt. P, App. 2, § 202.07 (directing a finding of not disabled for an individual of advanced age with at least a high school education who has skilled or semi-skilled previous work experience with transferable skills). The VE also

13

stated Plaintiff would not need any additional skills beyond the transferable skills he already possessed. (Admin. R. at 299). Thus, the ALJ properly determined Plaintiff was not disabled because he has over a high school education and skills that were transferable to jobs that existed in significant numbers in the national economy.

Finally, contrary to Plaintiff's assertions, the ALJ acknowledged that Plaintiff was approaching advanced age on his alleged onset date and entered the advanced age category during the relevant period. (Admin. R. at 39). In sum, the ALJ considered Plaintiff's advanced age and the ALJ properly found Plaintiff acquired skills from his past work that transferred to jobs existing in significant numbers in the national economy for both relevant periods.

## III. CONCLUSION

Therefore, based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 12), be **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 18), be **GRANTED**, and this matter be **DISMISSED**.

Dated: June 4, 2019

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).